UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


KENNETH COLVIN, JR.,

      Plaintiff,

v.                                    Case No. 2:10-cv-297
                                    HON. GORDON J. QUIST
GARY CAPELLO, et al.,

      Defendants.

_____/


## REPORT AND RECOMMENDATION

Plaintiff prisoner Kenneth Colvin, Jr., filed this lawsuit asserting that his rights were violated while he was conducting a "religious fast." Plaintiff alleges that on April 27, 2009, he had a heated conversation with defendant Timothy Hill regarding invasion of plaintiff's medical privacy while he was escorted from health care to his housing unit. Plaintiff asserts that defendant Hill indicated that he was tired of plaintiff's hunger strike and the fact that he needed to escort plaintiff to health care each day. Plaintiff was asked by medical staff if he had any pain and when plaintiff responded that he had kidney pain, defendant Hill stated "which one the right one?" Plaintiff stated that defendant Hill should not comment on plaintiff's religious or medical matters.

About 15 to 20 minutes after being escorted back to the cell, defendant Hill brought two state duffel bags to plaintiff's cell and told plaintiff that he was moving downstairs to cell A-118 because of plaintiff's refusal to eat. Plaintiff states that he was moved to a disciplinary wing from an honorary wing. Plaintiff complains that prison staff routinely moves prisoners from the honor wing to the disciplinary wing in retaliation for grievance filings.

Plaintiff complained that defendant Hill retaliated against him by moving him from the honorary wing to the disciplinary wing when defendant Hill wrote a false misconduct ticket against plaintiff on July 22, 2009, in retaliation for plaintiff's complaints.  Plaintiff states that defendant Hill was aware that plaintiff was number one for release to general population.  Plaintiff filed a grievance against defendant Hill on May 12, 2009, for moving him to the disciplinary wing out of retaliation for being on a religious fast.  Plaintiff states that defendants Capello and Sackett falsely stated that the move was routine and that there are no disciplinary wings at the prison. Plaintiff claims that defendants are conspiring to cover up the retaliatory act of moving him to the disciplinary wing.  Plaintiff alleges that he was moved on May 29, 2009, to the honorary wing after he returned from the MBP Brooks center from his religious fast.

Plaintiff claims that defendants Capello, Tribley and Sweeney continued the retaliation by not releasing him to general population on June 23, 2009, despite being misconduct free for five months.  Plaintiff was not released to general population after being misconduct free for six months, although other prisoners had been released who were not six month misconduct free.

Plaintiff stated that on January 10, 2010, another prisoner told him that he overheard defendant Hill talking with Guard Truesdale.  Defendant Hill stated that he was going to move plaintiff back to the disciplinary wing because plaintiff was refusing to eat due to his religious fast. On January 11, 2010, plaintiff was taken to health care where he refused medical treatment.  When plaintiff returned to his cell it had been "ransacked," by defendant Hill and defendant Sweeney, while plaintiff was placed in the shower area.  About an hour later plaintiff was told by defendant Sweeney that he would be moved downstairs.  Plaintiff claims that this was done simply to harass him and retaliate against him for being on a religious fast.  Plaintiff claims that he was on modified access to the grievance system from January 8, 2010, to April 7, 2010, which made the system

effectively unavailable to him despite his efforts to bring these matters to the attention of prison officials.

Plaintiff asserts that excessive force was used against him to submit to a medical examination.  On January 11, 2010, during plaintiff's seventh day of fasting, he refused to have his blood pressure and body weight checked.  He was told that if he refused, he would be forced by the facility's Response Team.  Later that day, plaintiff was informed by defendant Obiden that plaintiff needed to go to health care to have his blood pressure and weight checked.  Plaintiff was told that force would be used if he refused medical attention.  A Response Team came to plaintiff's cell. Once plaintiff believed that they were serious, he agreed to accept the medical treatment.  Plaintiff was placed in leg irons and handcuffs.  Two Response Team members grabbed him by the right arm and placed pressure on his right arm.  Plaintiff was forced to bend down while being escorted. Plaintiff argues that unnecessary force and pressure was used to escort him to medical care and he was yelled at to stop resisting although he never resisted.

When plaintiff arrived in the health care room, he was placed on a bed and one defendant applied pressure to his right jaw and ear area.  Plaintiff stated that he was having trouble breathing and a defendant yelled that there was nothing wrong with plaintiff.  Plaintiff claims that he was aggressively taken off the medical bed and escorted to the weight scale and aggressively placed on the scale.  After his weight was taken, plaintiff tried to step off the scale.  He was yelled at to stop resisting and then slammed to the floor where his face struck the floor.  Plaintiff was taken back to his cell in total pain, dazed, exhausted and weak.  Later that evening plaintiff was visited and examined by nurse Nancy.  Plaintiff was taken to Baraga Memorial Hospital for observation because of elevated blood pressure and a rapid heart rate.

Plaintiff claims that he received loose teeth, bruises on his upper lip and right eyebrow, a bruised and sore shoulder, a bruised and sore jaw and ear, and cuts and bruises on both ankles and wrists from handcuffs and leg irons. Plaintiff claims that the force used was unnecessary because he submitted to the request for medical care although he did not want medical care.

Plaintiff claims that he was denied access to the court by defendants Capello, LaPlante and Hietikko when he was placed on modified access to the grievance system in retaliation for five duplicated grievances filed about the Kosher meal program. Plaintiff claims that his request for grievance forms were ignored, preventing him from exhausting his grievances on issues he wished to present to the court.

Plaintiff claims that when he was approved for the Kosher meal program on December 16, 2010, he was not immediately transferred to a Kosher approved facility. At the time of his reinstatement to the program, Baraga Maximum Correctional Facility had not obtained official approval to start a Kosher meal program. Plaintiff claims that defendant Berry came to his cell and informed plaintiff that the Kosher meal program was going to start on December 25, 2009. Plaintiff engaged in an argument with defendant Berry, because plaintiff felt that the program would not meet Kosher standards. Defendant Berry walked away from plaintiff stating that he would see to it that plaintiff was not placed on the Kosher diet. Plaintiff filed grievances that the Kosher kitchen did not meet proper standards for sinks, inspection and trays, and also claimed that he was being retaliated against. Defendant Capello responded by stating that defendant Martin personally inspected the Kosher kitchen and witnessed and approved the procedure for preparation and serving meals. Plaintiff complains that this was an insufficient response because it failed to address the grievance about appropriate Kosher sinks. Further, plaintiff complains that he should have been transferred to a facility that was approved for Kosher diets.

Plaintiff began a 52-day religious fast on January 4, 2010.  Plaintiff complains that he lost over 50 pounds, suffered hunger pains, headaches, soreness, confusion, dizziness, acid reflux, vision problems, heart problems, mental problems and felt embarrassed due to his appearance. Plaintiff was told that he was having trouble with his kidneys, due to increased protein in his body and because his body was eating away his muscle.  Plaintiff states that he refused to eat non-Kosher food.  Plaintiff was transferred to Marquette Branch Prison (MBP) on February 9, 2010, which did not have a Kosher meal program.  Plaintiff explained to the MBP doctors that he was approved for Kosher food at AMF, but AMF did not have a proper Kosher food program.  Plaintiff continued his fast, and was told that he should be transferred to a prison with a Kosher meal plan.  However, defendant Caruso, with approval from the Michigan Attorney General's Office, stated that  plaintiff should stay at MBP until he eats.

Plaintiff claims that after he was reinstated on December 15, 2009, to receive a Kosher diet, his constitutional rights were violated because the program was not properly administered.  Plaintiff claims that the Baraga kitchen failed Kosher certification.  Specifically, plaintiff complains that sinks were not properly used and that triple sinks should have been used to wash and sanitize equipment as recommended by former MDOC Manager Gatha McClellan. Plaintiff complains that his meals were never prepared properly and staff was never properly trained. Plaintiff received food items during the Sabbath that were "hot/warmed" which were bake heated or cooked during the Sabbath which violated Orthodox Jewish Dietary Laws which commands, "Do not light a fire in any of your dwellings on the Sabbath day."  Plaintiff complains that he is not supposed to eat foods cooked on the Sabbath day or reheated on the Sabbath day.  Plaintiff claims that defendants were clearly unaware of the Sabbath day and proper preparation of food for the Sabbath day.

- 5 -

On July 22, 2009, plaintiff states that while escorting plaintiff from yard , defendant Hill stated, "You can forget about going to yard, and you can pack your cell because you're going back downstairs where you belong.  You need a nurse, now."  Plaintiff was then moved from the honorary wing to the disciplinary wing and was given a misconduct by defendant Hill for threatening behavior.  Plaintiff claims that this was a false misconduct ticket.

On July 23, 2009, plaintiff claims that defendant Hill came to his cell and tried to serve plaintiff a tainted meal tray.  Plaintiff knew that it was tainted because he had witnessed defendant Hill taint other inmates' trays.  Plaintiff claims that defendant Hill angrily slammed the door slot and told plaintiff that he would make his life a living hell.  Plaintiff never accepted another tray from defendant Hill or "his comrades" while he was confined at AMF.

On August 24, 2009, defendant Hill came to plaintiff's cell and told plaintiff that he was going to bury him in tickets because of plaintiff's grievance writing.  Defendant Hill then went to prisoner Henry-El's cell and told prisoner Henry-El about his plan to write false misconduct tickets on plaintiff.

On September 24, 2009, defendant Sweeney wrote a misconduct ticket for insolence against plaintiff after plaintiff explained he needed legal property from his duffle bag.  Plaintiff claims that this was a false misconduct ticket alleging that he had called Sweeney derogatory names.  Plaintiff claims that defendant Sweeney made false statements after interviewing plaintiff on a grievance against defendant Hill.  Plaintiff claims that on September 11, 2009, defendant Sweeney gave plaintiff's legal documents that were being photocopied and returned to another prison guard, when the procedure requires defendant Sweeney to personally deliver the documents.  Plaintiff claims that he was continuously harassed by defendants Sweeney and Hill.  Plaintiff has sued

defendants Hietikko, LaPlante, Capello and Tribley because they assigned grievances that plaintiff filed to defendant Sweeney and defendant Hill.

Defendants move for summary judgment.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants Capello, Hill, Sweeney, Sackett, Obiden, Linder, Majurin, Saari, Jurva, Charles, Barry, Stieve, Martin and Tribley argue that plaintiff's excessive force claim should be

dismissed because plaintiff failed exhaust his grievance remedies against them.  Plaintiff's claim alleges that defendants forced him to receive medical care while he was undertaking a religious fast protesting the refusal to provide him Kosher meals.  Defendants claim that plaintiff was warned on three separate occasions that he would be forced to take a blood pressure and weight check if he refused the tests.  Plaintiff ultimately agreed to go to health care.  Plaintiff was escorted to health care and complains that unnecessary force was used during the escort and continued in the health care room.  Plaintiff alleges that he sustained injuries including loose teeth, a bruise under his lip, and pain in his shoulder, back, jaw, right ear, ankles and wrists.  Plaintiff complains that defendants Obiden, Linder, Majurin, Saari, Jurva, Charles and Capello were involved in the unauthorized use of force.

Plaintiff was on modified access to the grievance procedure at the time he should have exhausted his claims.  Plaintiff concedes that he never filed a grievance, but claims it was not his fault because his multiple requests for grievance forms were ignored.  Plaintiff claims that his requests were simply ignored each time he made them.  Plaintiff asserts as a result the grievance procedures were effectively unavailable to  him.

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007).  A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial.  *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  A moving party with the burden of proof  faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his

showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Defendants argue that plaintiff never properly presented a grievance on these issues. Defendants submit that plaintiff made three requests for grievances. Two requests involved his placement on modified status and one involved his claim that his cell was ransacked by defendants Sweeney and Hill and one involved his claim of being forced to accept medical treatment. That request was denied according to defendants because it contained multiple issues. Plaintiff disagrees with that characterization.

The only relevant issue is whether plaintiff's failure to grieve his excessive force claims against defendants was the result of a prison official ignoring plaintiff's requests for grievance forms. Defendants have shown that plaintiff never made a request for grievance forms to assert an excessive force claim against these defendants. Plaintiff argues that not all his requests for grievance forms were processed. Plaintiff has attached exhibits to his response motion (ex. 13, 14, 15, 16, and 17), to show that he made grievance form requests that went unanswered. However, none of those

requests are for his alleged claim of excessive force. The record shows that plaintiff attempted to grieve a claim that he was being forced to go to Health Care Services by defendants Hill and Sweeney. In the Spring of 2010, plaintiff filed a grievance indicating that he did give "Capello and Sherry a complaint/affidavit that I had written to them regards to my issues, including the assault dated January 11, 2010 by the Response Team. There was no excuse to totally ignore my modified access grievance request." See Page ID #420. Thus, there is a factual issue as to whether plaintiff attempted to grieve the alleged assault of January 11, 2010, and was denied that opportunity by Capello and Sherry.

Defendants alternatively move to dismiss the excessive force claims because plaintiff cannot show that excessive force was used against him. Plaintiff claims that the authorization to use force, particularly a chemical agent, was made in violation of policy and that he had the right to refuse medical care. The issue presented, however, is whether defendants used excessive force against plaintiff.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the use of force must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to

- 10 -

prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321-22.

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346.

On January 11, 2010, while plaintiff was undertaking a hunger strike, Warden Capello, Deputy Warden Tribley, and Dr. Patel of the Duane Waters Hospital authorized the use of a chemical agent and a move team if it was necessary to force plaintiff to submit to a health care assessment, which included a weight check and blood pressure check. The move team consisted of defendants Obiden, Linder, Majurin, Jurva, Saari and Charles and was video recorded by Officer Karppinen. Plaintiff at first refused orders for a strip search. Chemical agents were not used. Once plaintiff decided to comply with the orders to submit to health care, he was placed in arm and leg restraints and removed from his cell. Plaintiff was instructed to bend at the waist while walking, which is the standard method for a prisoner escort to prevent assaults on staff.

Plaintiff was taken to health care so that a nurse could check his weight and blood pressure. Plaintiff started twisting and turning. Defendant Charles applied a hold on plaintiff. When that failed, defendant Charles applied a peroneal strike and plaintiff was secured on the floor. Plaintiff was taken back to his cell and his restraints were removed. RN Haataja noted that plaintiff was "violently angry and non-compliant. . . ." She was unable to take plaintiff's weight because he was "bucking" the scale. Plaintiff claims that he was not resisting, he was not violent or angry, and that restraint and force were unnecessary. Plaintiff claims a review of the video recording will establish that the force used was excessive. Plaintiff claims that he did get on the scale, but defendants used force that made him scream in pain. Further, plaintiff claims that defendants' reports are contradictory. Plaintiff further claims that he was treated for injuries that he received from defendants' assault from medical and dental care personnel. In the opinion of the undersigned, a question of fact exists whether defendants used excessive force against plaintiff. The video recording is not part of the record in this case. It appears that plaintiff has not had the opportunity to view the video recording. The video recording is the best evidence available in this case that could support defendants' claims or plaintiff's claims.

Similarly, defendants' claim that they are entitled to qualified immunity should be denied because a question of fact exists as to the merits of plaintiff's excessive force claims. When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the

plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

Plaintiff has filed motions that relate to this issue.   Plaintiff would like to add two defendants to this claim (Docket #76), obtain the name of the doctor who authorized the use of force[1] (Docket #57),  and additional time to file a complaint against that defendant (Docket #74).  Plaintiff also moves for limited discovery (Docket #92) to help resolve issues such as finding out Dr. Patel's full name and current address, email correspondence, and a copy of the MDOC's use of force policy for the court's in-camera inspection.   These motions should be granted to the extend the stay of discovery should be lifted.[2]

Plaintiff claims that the Kosher food program at Baraga Correctional Facility failed to properly serve Kosher meals in violation of his religious rights.  Plaintiff claims that Defendants' conduct has violated his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1.  Section 2000cc-1 states:

(a)     General Rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

(1)     is in furtherance of a compelling governmental interest; and

---

[1]The use of force that was authorized apparently would be the use of a chemical agent.  However, no chemical agent was actually used.

[2]Once plaintiff is able to engage in discovery, plaintiff may file a motion for leave to file an amended complaint.  Plaintiff's proposed amended complaint should be written to completely replace his original complaint and should not be written in an attempt to revise any previously dismissed claims or parties.

> (2) is the least restrictive means of furthering that compelling governmental interest.

This rule applies solely in cases where the "substantial burden is imposed in a program or activity that receives Federal financial assistance," or where the burden affects "commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b).

Defendants claim that they are entitled to qualified immunity on plaintiff's claims that Baraga Correctional Facility failed to properly prepare Kosher meals. Plaintiff complains that Kosher meal preparation requires three separate sinks, proper training of staff, and that food on the Sabbath day cannot be served "hot/warmed." Plaintiff alleges that he should have been transferred to an approved Kosher facility. Defendants argue that Baraga is as approved Kosher meal facility and at all times functioned properly as a Kosher facility. Defendants argue that plaintiff simply wanted to force his transfer to a facility in lower Michigan and his claims of improper preparation of Kosher meals were simply a ploy to gain a transfer.[3] Defendants actually offered to bring Kosher food prepared outside the facility to plaintiff, but he refused that offer by stating that he would not eat meals in a facility that was not Kosher. Further, defendants argue that it is clear that plaintiff does not even understand what Kosher means or the accepted cooking methods of Kosher foods.

Michigan Department of Corrections Special Activities Coordinator Michael Martin submitted an affidavit stating that he inspected the Baraga Correctional Facility's Kosher meal

---

[3]Plaintiff has presented several memorandums and email discussions from the individual defendants who were trying to determine what to do with plaintiff while he undertook his hunger strike to attempt to gain a transfer to a downstate Kosher approved facility. It is clear from reading that documentation that defendants were concerned primarily with not establishing a precedent that they would cater to an inmate's transfer request simply because the inmate went on a hunger strike.

kitchen and program in January 2010, along with Food Service Director Herbert Barry and Regional Sanitarian Michael Kirkwood. He found that the Kosher program at Baraga met MDOC policies for Kosher food, preparation, and sanitation. Further, he attests that contrary to plaintiff's claims, Baraga did not fail the Kosher certification inspection. Further, as to plaintiff's claim that Baraga did not use a three compartment sink, defendant Martin states that he consulted with Rabbi Doniel Neustadt, Chairman of the Council of Orthodox Rabbis of Greater Detroit, who confirmed that the water delivered to the food preparation area was Kosher.[4]  Defendant Barry also attests that the Kosher meal program was approved since it started in December 2009. The process and procedures used were approved by Orthodox Rabbi, Yosef Weingarten. Defendant Barry attests that Baraga uses a Kosher oven which is marked Kosher and used for Kosher meals only. In response to plaintiff's claims that a three compartment sink must be used, defendant Barry attests that washing containers are used as the three compartment sink washing procedure. The tap water is Kosher and all dishes and cooking utensils are washed in these tubs and not allowed to come into contact with anything by the Kosher wash tubs.[5]  Disposable towels and Kosher soap are used. Contrary to plaintiff's claim, food is served cold on Sabbath Days. Any cooking that may need to be done is

---

[4]There is no dispute that Rabbi Neustadt did not actually inspect the Baraga kitchen.

[5]Plaintiff has focused on the fact that a permanent sink had not been installed. However, plaintiff has not shown that the system of tubs that were used violated Kosher law. Defendants have submitted evidence that the system was Kosher approved and plaintiff has not rebutted that evidence by simply believing otherwise. Defendants clearly felt that plaintiff was playing the system, because the Kosher meals program at Baraga was more than adequate. There were also expressed concerns about plaintiff's medical condition during the hunger strike and the best way to take care of his medical needs.

completed and chilled before sundown on the proceeding Friday.  No hot or warmed-up food is served on Sabbath days.[6]

Plaintiff argues that if he believes that he is being served food that is not properly prepared as Kosher, then he is violating his religious beliefs if he eats that food.  However, plaintiff has presented no objective basis to believe that the meals provided were not properly prepared as Kosher.  Each of plaintiff's concerns have been rebutted by defendants.  Defendants have shown that Kosher meals are properly prepared at the Baraga facility.  Plaintiff claims that defendants submitted a paper trail to cover up their desire to remove him from the Kosher meal program, because they were aware of possible litigation from plaintiff regarding the failure to transfer him to an approved Kosher facility.  Plaintiff's belief that his food was not properly prepared as Kosher was drawn upon baseless assumptions and hearsay.[7]  In the opinion of the undersigned, contrary to plaintiff's claims, there is no evidence to support plaintiff's claim that the Kosher meal program at Baraga substantially burdened his right to practice his religion.

Defendants Capello, Hill, Sweeney, Sackett, Obiden, Linder, Majurin, Jr., Saari, Jurva, Charles, Barry, Stieve, Martin and Tribley move to dismiss plaintiff's retaliation claims.  Plaintiff claims that defendant Hill retaliated against him by transferring him from a cell in the honorary wing of the prison to the disciplinary wing of the prison.  Plaintiff claims that defendants Sweeney, Sackett and Capello falsely responded to his grievance by stating that the prison does not

---

[6]Kelly Wellman, R.D., provided an affidavit stating that she never had a conversation with plaintiff discussing the status of the Kosher diet at Baraga.  Such a diet is a religious diet and not a medical diet.  Further, she has no knowledge of the Kosher certification status of the kitchen.

[7]Plaintiff presented a MDOC memorandum concerning a 1997 inspection of the Standish Maximum Correctional Facility Kosher kitchen, which outlined problems with that kitchen in 1997.

have a disciplinary wing.  Plaintiff alleges that he was continued in administrative segregation solely because he engaged in a religious fast while another prisoner who was not misconduct free was released from administrative segregation.   Plaintiff claims that defendants Hill and Sweeney ransacked his cell on January 11, 2010, in retaliation for his religious fast.   Plaintiff claims that defendants Hill and Sweeney engaged in a continuous campaign of harassment including name calling and issuing false misconduct tickets.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants have explained that plaintiff was housed in administrative segregation. Contrary to plaintiff's claims, all administrative segregation cells are the same except for observation cells in administration segregation.  Plaintiff was never placed in an observation cell.  According to defendants, there does not exist a disciplinary wing or an honorary wing.  Administrative segregation prisoners are moved within administrative segregation cells as a matter of course.  If true, plaintiff cannot establish that adverse conduct was taken against him as a result of a cell change within an administrative segregation unit.  However, plaintiff has submitted several affidavits from other prisoners who all indicate that the lower floor cells that plaintiff was moved to are undesirable and

called disciplinary cells as opposed to the upper floor cells which are called honorary cells.  Further, plaintiff has submitted affidavits from prisoners who were told that plaintiff was moved to the less desirable cell simply because he refused to end his religious fast.  Plaintiff complains that the cell that he was moved to was dirty and defendant Hill told him that he would not have been moved to a dirty cell if he just ended his fast.  It may, in fact, be true that there are no official disciplinary wings in administrative cell housing.  However, it appears that prisoners consider the lower floor cells disciplinary cells.  Plaintiff has presented sufficient evidence to support his retaliation claims on the issue of the transfer to an undesirable cell, but not on the issue of the responses to his grievances.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000).

Plaintiff claims that his continued confinement in administrative segregation was due to the fact that he engaged in a religious fast.  Defendants deny this claim and assert that plaintiff cannot factually support such a claim.  Defendants claim that administrative segregation status is determined on a case-by-case basis.  Defendants assert that the Security Classification Committee met on July 20, 2009, and continued plaintiff's administrative segregation status.  Plaintiff has shown that he was misconduct free for over six months and received a high evaluation while confined in administrative segregation.  Defendants have not submitted any rationale or reason for the decision to keep plaintiff in administrative segregation.  In the opinion of the undersigned, a question of fact exists on this issue.   Similarly, a question of fact exists regarding whether defendants Hill and Sweeney "ransacked" plaintiff's cell before moving plaintiff to a less desirable administrative segregation cell.

Defendants Hill and Sweeney argue that plaintiff's claim that false misconduct tickets were issued in retaliation for his religious fast should be dismissed on the basis of *Heck v.*

*Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). In *Thomas v. Eby*, 481 F.3d 434,439-40 (6th Cir. 2007), the Sixth Circuit held that Michigan's disciplinary credit system applicable to prisoners whose crime was committed after April 1, 1987 was not equivalent to the system at issue in *Edwards v. Balisok*, 520 U.S. 641 (1997). Because the disciplinary credit system does not necessarily result in an earlier release, only the possibility of an earlier release, the *Eby* court held that the *Heck/Edwards* exception did not bar a prisoner's challenge under § 1983. In *Taylor v. Lantagne*, 418 Fed. Appx. 408, 2011 WL 1284359 (6th Cir. Apr. 5, 2011), the Sixth Circuit held that, for crimes committed after December 15, 2008, prisoners do not accrue credits of any kind, only "disciplinary time," which has no effect on the date of discharge; it is merely submitted to the parole board for consideration at the time of parole. Defendants have not properly supported their motion on this issue. In the opinion of the undersigned, a question of fact exists on plaintiff's claim that he was issued false misconduct tickets in retaliation for his religious fast.

Similarly, in the opinion of the undersigned, defendants are not entitled to qualified immunity on the retaliation claims where there exists a genuine issue of material fact. The law regarding retaliation has been clearly established for some time. When factual issues are in dispute qualified immunity is not an available defense. *Kain*, 156 F.3d 669, 672.

Defendant Napel moves for summary judgment based upon lack of personal involvement. Plaintiff alleges that defendant Napel was part of a meeting where it was decided that plaintiff should be moved from MBP to a Kosher facility and that plaintiff sent letters to defendant Napel regarding his complaints about lack of Kosher foods. The court must accept plaintiff's allegations as true. In order to obtain summary judgment, defendant cannot merely argue in a motion that he is entitled to dismissal based upon lack of personal involvement or qualified immunity without submitting some other type of factual support which can establish the argument. In other

words, when defendant submits a motion for summary judgment to the court, defendant must rely upon an affidavit or some other evidence outside the plaintiff's complaint to meet his burden. Defendant cannot prevail on an unsupported argument or statement in a brief. Defendant has failed in his burden to establish that no genuine issue of fact exists entitling him to summary judgment.

Defendant Engelsgjerd moves for summary judgment. Defendant Engelsgjerd's only involvement in this case was to examine plaintiff on February 11, 12 and 16, 2010, when plaintiff was brought to the Brooks Medical Center during his religious fast. Dr. Engelsgjerd noted that plaintiff's vital signs were normal. Dr. Engelsgjerd had no other involvement with plaintiff. Dr. Engelsgjerd did not have any knowledge of the Kosher certification standards and no involvement in regulating Kosher diets at the facility. His sole involvement is to provide medical care to plaintiff. Dr. Engelsgjerd recalls discussing the medical risks with plaintiff of engaging in a voluntary fast. Dr. Engelsgjerd indicates that he has no authority to transfer inmates or recommend the transfer of an inmate based upon religious practice or the need for a Kosher diet.

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984). In the opinion of the undersigned, Dr. Engelsgjerd was not involved in plaintiff's claim that defendants failed to

- 20 -

transfer him to a Kosher facility.  Dr. Engelsgjerd was only involved in providing plaintiff medical care while plaintiff engaged in his religious fast.  Plaintiff cannot show that Dr. Engelsgjerd violated plaintiff's constitutional rights.

Defendant Dr. Harshad Patel moves for dismissal because he never worked at Duane Waters Hospital in any capacity and never has been involved in any capacity with plaintiff's medical care.  Plaintiff filed a response and agrees that Dr. Harshad Patel should be dismissed from this action because he was mistakenly served a summons and complaint.

Accordingly, it is recommended that defendants' Motion for Summary Judgment as to plaintiff's excessive force claim (Docket #23) be denied.  It is further recommended that defendants' Motion for Summary Judgment as to the issue pertaining to Kosher meals at Baraga Prison (Docket #30) be granted, dismissing this claim against defendants Capello, Hill, Sweeney, Sackett, Obiden, Linder, Majurin, Saari, Leland Jurva, Charles, Barry, Stieve, Martin and Tribley. It is further recommended that defendant's Motion for Summary Judgment on plaintiff's retaliation claims (Docket #33) be granted in part, dismissing the claims that defendants Sweeney, Sackett and Capello retaliated against plaintiff by making a false statement in a grievance response and denied on all other issues.  It is further recommended that defendant Napel's motion for summary judgment (Docket #36) be denied.  It is further recommended that defendant Dr. Engelsgjerd's motion for summary judgment (Docket #71) be granted, dismissing him from this case.  It is further recommended that defendant Dr. Harshad Prahlad Patel's Motion to Dismiss (Docket #48) be granted, dismissing him from this case.

It is recommended that plaintiff's request that the Court order that the defendants release the full name of the physician who authorized the use of force against plaintiff (Docket #57), plaintiff's motion requesting additional time to serve the defendant (doctor) in the excessive use of

force/medical claim (Docket #74), plaintiff's motion for leave to add defendants Jody Karppinen and

Janet Haataja (Docket #76), and plaintiff's request for limited discovery on his excessive force claim

(Docket #92) be denied at this time, without prejudice.  The stay of discovery will be lifted and

plaintiff will be allowed the opportunity to file a motion for leave to file an amended complaint once

he obtains necessary discovery from defendants.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be

served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt

of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140

(1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE


Dated:   February 17, 2012