UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH COLVIN, JR.,

      Plaintiff,                                      Case No.  2:10-cv-297

v.                                                       HON. GORDON J. QUIST

GARY CAPELLO, *et al.*,

      Defendants.
_____/

**MEMORANDUM OPINION AND ORDER**

On February 17, 2012, the Magistrate Judge issued a Report and Recommendation ("R & R") (docket no. 94) recommending that Defendants' Motions for Summary Judgment be granted in part and denied in part. Plaintiff, Kenneth Colvin, Jr., filed Objections to the R & R. (Docket no. 97.) Defendants also filed Objections (docket no. 95), to which Colvin filed a response. (Docket no. 99.) "The district judge must determine *de novo* any part of the Magistrate Judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After conducting a *de novo* review of the R & R, all parties' Objections, and the pertinent portions of the record, the Court concludes that the R & R should be adopted in part and rejected in part.

**I. DEFENDANTS' OBJECTIONS**

    **1.**      **Defendants' Objection No. 1**

Count 4 of Colvin's complaint alleges that on January 11, 2010, several Defendants (the Response Team) used excessive force when they forcibly escorted Colvin to health care and restrained Plaintiff while in the health care room.

Defendants raised the affirmative defense that Colvin did not exhaust his administrative remedies. Colvin contends that the administrative remedy process had been "totally impeded" and

thus "unavailable" to him. (Compl. ¶ 29.)

On January 8, 2010, three days before the alleged use of excessive force, Colvin was placed on Prisoner Grievance Modified Access. To submit a grievance while on Modified Access, a prisoner must first request a grievance form from the Step I Grievance Coordinator. *See* MDOC Policy Directive 03.02.130 ¶ KK. Colvin was informed of this required procedure when he was placed on Modified Access. (Docket no. 24-3 at Page ID 140.) To show that Colvin did not properly exhaust his administrative remedies, Defendants have produced prison records which show that Colvin never made a request for grievance forms to assert an excessive force claim against any Defendant in Count 4. (Docket no. 24-3.) Colvin contends, however, that MDOC officials did not process his requests for grievance forms. The R & R found that an issue of fact exists "as to whether plaintiff attempted to grieve the alleged assault of January 11, 2010" because in April 2010, Colvin filed a grievance regarding his inability to request a grievance form from the Grievance Coordinator, including a form to grieve the alleged assault on January 11, 2010. (R & R at 10 (emphasis added); docket no. 47-2 at Page ID 418-21.)[1]

Defendants object to the R & R because they argue that Colvin's grievance is an elaborate attempt by an experienced federal litigator to cover up his failure to administratively exhaust his excessive force claim. Defendants note that: 1) MDOC facilities keep records of all requests for grievance forms, and there are no records that Colvin made such a request to grieve the events that he alleges in Count 4; 2) Colvin has attached hundreds of documents, but, despite his thoroughness, Colvin has failed to attach his alleged requests for grievance forms–the one document that would support his self-serving allegations; and, 3) Colvin filed a grievance that he was forced to receive medical treatment on January 11, 2010, but made no mention of excessive force being used on that day.

---

[1] None of the other grievances that Colvin submitted refer to an excessive force claim or an alleged assault that was allegedly perpetrated by any Defendant listed in Count 4.

2

This Court agrees with the R & R that a genuine issue of material fact exists whether Colvin attempted to administratively exhaust the events that comprise his excessive force claim. Contrary to Defendants' assertion, Colvin has provided the grievance-form requests that he made to an AMF Grievance Coordinator in order to file a grievance regarding the Response Team's use of force. (Docket no. 47-1 at Page ID 389.) On January 14, 2010, Colvin wrote a letter to Dana Hietikko, a Grievance Coordinator, stating "I am requesting grievances for the following: On January 11, 2010, I was assaulted and injured by the Response Team during the time I was escorted to health care." (*Id.*) Therefore, Defendants' objection will be overruled.

2. **Defendants' Objection No. 2**

With respect to Count 4, Defendants object that the R & R includes several defendants that Colvin has not named as a Defendant. In addition, Defendants argue that they should be dismissed, except for Defendant Charles, for lack of personal involvement. Moreover, Defendants argue that Defendant Charles did not use excessive force.

Colvin alleges that the Response Team–Defendants Obiden, Linder, Majurin, Jurva, Charles, and Saari–used excessive force in escorting and restraining Colvin for a medical exam. (Compl. ¶ 18.) Colvin alleges that Defendants Capello, Tribley, and Patel authorized the use of force. (Compl. ¶¶ 18, 28.)

This Court agrees with Defendants that every other Defendant, besides the nine Defendants in the preceding paragraph, should be dismissed from Count 4. No other excessive force allegations are made against any individuals in Count 4.

In addition, this Court agrees with Defendants that Colvin has not come forth with any evidence to suggest that Defendants Capello, Tribley, or Patel authorized the use of *excessive* force. Even though these Defendants authorized force, these Defendants did so for a legitimate penological justification–to ensure Colvin was not placing his life at jeopardy with his hunger strike. As

3

enunciated by the R & R (R & R at 10-11), the law requires much more for Colvin to state an Eighth Amendment claim for the use of excessive force than merely authorizing the use of force for a legitimate penological justification.

Furthermore, Defendants contend that Colvin alleges that only *one* Defendant used excessive force–Defendant Charles.[2] This contention is incorrect because Colvin alleges that Defendant Charles, "*along with the other Defendants from the Response Team*, slammed me on the floor, which the right side of my face and head hit the floor." (Compl. ¶ 21.) Thus, Defendants' objection that Colvin states an excessive force claim against only Defendant Charles is overruled because Colvin alleges an excessive force claim against all six Defendants of the Response Team. Moreover, this Court agrees with the R & R that a genuine issue of material fact exists whether these Defendants used excessive force.

In sum, all Defendants, besides Defendants Obiden, Linder, Majurin, Jurva, Charles, and Saari, will be dismissed from Count 4.

### 3. **Defendants' Objection No. 3**

Count 1 of Colvin's complaint alleges that Defendant Hill retaliated against Colvin by moving Colvin's cell from an "honorary wing" to a "disciplinary wing." Defendants object that, since Colvin's housing unit was not separated into an "honorary wing" and a "disciplinary wing," Defendant Hill could not have transferred Colvin to the "disciplinary wing" in retaliation.

Defendants have put forth evidence to establish that there is no such thing as a "disciplinary wing" or "honorary wing." Rather, the prisoners regard certain cells to be "disciplinary" or "honorary" based on the desirability of the cell, which depends on the floor level of the cell.

---

[2] In the complaint, the Response Team member who applied "harsh pressure," used aggressive force, and "slammed" Colvin to the floor is unidentified. (Compl. ¶¶ 19-21.) However, Defendants' motion for summary judgment concedes this individual is Defendant Charles, and the R & R recognized as much.

Defendant Hill's objection will be granted because it is well settled that a prisoner has no constitutional right to placement in any particular section within a prison. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Johnson v. Henderson*, 1995 U.S. App. LEXIS 36902 (6th Cir. Sept. 28, 1995). Colvin's move from one cell to another within his same housing unit was considered a routine matter. (Docket nos. 34-2, 34-3, & 34-4.) That is, Defendant Hill established that he "would have taken the same action in the absence of the protected activity," and thus "he is entitled to prevail on summary judgment." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Therefore, Colvin's claim against Defendant Hill based upon retaliation for transferring Colvin to a "disciplinary wing" (Count 1) will be dismissed.

**4.    Defendants' Objection No. 4**

In Count 2, Colvin alleges that Defendants Capello, Tribley, Sackett and Sweeney retaliated against him by continuing Colvin's administrative segregation status. Defendants argue that Colvin cannot show a causal connection between Colvin's continuance in administrative segregation and his religious fast. The R & R found that a question of fact exists because "Defendants have not submitted any rationale or reason for the decision to keep plaintiff in administrative segregation." (R & R at 18.)

Even though this Court does not particularly agree with the R & R's statement that Defendants have provided <u>no</u> reason to keep Colvin in administrative segregation, the Court agrees that Colvin has shown a genuine issue of material fact whether the reasons that Defendants gave were pretext. Plaintiff established that he was misconduct free for over six months and received a high evaluation while confined in administrative segregation. Also, viewing the evidence in the light most favorable to Colvin, a different prisoner (Davis) was released from administrative segregation with a lower evaluation and who engaged in more recent misconduct. Therefore, a genuine issue of material fact exists whether Defendants' reasons for keeping Colvin in

5

administrative segregation were pretext for Colvin engaging in his religious fast.

Defendant's Objection will be overruled.

### 5. Defendants' Objection No. 5

Colvin alleges that Defendants Hill and Sweeney issued Colvin false and retaliatory major misconduct tickets. Colvin was issued two major misconduct violations while at AMF. First, on August 12, 2009, Colvin was found guilty of Threatening Behavior. Second, on October 14, 2009, Colvin was found guilty of Insolence. (Docket no. 34-11 at Page ID 335.)

Defendants object because they argue that Colvin's claims should be dismissed because he was found guilty on the major misconduct tickets.

"A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim'" that alleges a prisoner was issued a "false" ticket. *Jackson v. Madery*, 158 F. App'x 656, 662 (2005) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)); *see also Hynes v. Squillace*, 143 F.3d 653 (2d Cir. 1998). Colvin's misconduct hearing reports written by the hearing officer show that there was some evidence to support the guilty findings on his major misconduct tickets. (*See* docket no. 35-11.)

Therefore, Defendants' Objection will be granted. Thus, summary judgment will be granted in favor of Defendants Hill and Sweeney on Count 8–Colvin's claim that Defendants Hill and Sweeney issued Colvin false and retaliatory misconduct tickets.

### 6. Defendants' Objection No. 6

Defendants object that Defendant Napel should be dismissed for lack of the requisite personal involvement to state a § 1983 claim. Defendants contend that Colvin has not made any factual allegations showing Defendant Napel's personal involvement and also that evidence in the record supports Defendant Napel's defense for lack of personal involvement.

Here is the entirety of Colvin's allegations regarding Defendant Napel: Colvin alleges that

6

Defendant Napel attended a "meeting regarding [Colvin] and [his] religious fast," and the meeting participants decided that Colvin should be transferred to a Kosher facility (Compl. ¶ 42); and, Colvin found out that Defendant Napel became the warden in place of Greg Hofbaugh. (Compl. ¶ 44.)

Defendant Napel's Objection will be granted. Colvin does not allege that Defendant Napel engaged in any conduct that violated a substantive constitutional right of Colvin's that could subject Defendant Napel to § 1983 liability. Even if Defendant Napel received Colvin's letters that were sent to the prior warden, bringing a complaint to the attention of a supervisory official is insufficient to support § 1983 liability. Defendant Napel's motion for summary judgment (docket no. 36) will be granted and Defendant Napel will be dismissed from this action.

## II. COLVIN'S OBJECTIONS

### 1. Exhaustion Issue

Colvin's objection will be overruled because he objects to a ruling in his favor. The R & R found in favor of Colvin on Defendants' affirmative defense that Colvin did not administratively exhaust his excessive force claim. Moreover, as discussed above (Defs.' Obj. 1), this Court agrees with the R & R that a genuine issue of material fact exists whether Colvin attempted to properly administratively exhaust his excessive force claim.

### 2. Use of Excessive Force/Medical Privacy Claim

Colvin objects to the R & R's finding on the substance of his Eighth Amendment claim. Colvin contends that the R & R failed to address Colvin's "Medical Privacy Claim" that he raised in his complaint and "mischaracterized" Colvin's use of excessive force claim. Colvin says that he "explicitly cited both the Eighth and Fourteenth Amendment" to assert his medical privacy claim. Colvin clarifies his use of excessive force claim as follows:

> The Plaintiff wants to make clear with the Court that the excessive use of force was the fact that he was forced to accept medical treatment via the Response Team, and the force was not related to custody safety or security issues.

7

(Docket no. 97 at Page ID 799.)³   Colvin urges this Court to review these claims.  Pursuant to Colvin's invitation, and this Court's duty,⁴ this Court will review the claims.

Count 4 of Colvin's complaint is labeled "excessive use of force/medical privacy claim regarding medical issue." (Compl. ¶¶ 16-29.)  Taking into account Colvin's aforementioned clarification, and after a careful reading of Count 4 of Colvin's complaint, it appears to the Court that Defendants and the R & R in-part mischaracterized Colvin's use of excessive force claim.  The R & R and Defendants did not address Colvin's use of excessive force claim "that he was forced to accept medical treatment."⁵

Under the Fourteenth Amendment, individuals in state custody enjoy a protectable liberty interest to refuse medial treatment, but "that right is not absolute and is particularly susceptible to regulation in the prison setting." *Davis v. Agosto*, 89 F. App'x 523, 528 (6th Cir. 2004).  In *Davis*, the Sixth Circuit cited with approval an Eighth Circuit case which rejected a prisoner's constitutional challenge to the prison officials' decision to force-feed an inmate to preserve his health after a hunger strike.  *Id.* (citing *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992)).  Here, Defendants merely required Colvin to undergo a blood-pressure and weight check to monitor Colvin's health while he engaged in a hunger strike; this pales in comparison to the prison officials' intrusion in *Martinez*.  Therefore, Colvin's Fourteenth Amendment claim that Defendants violated his right to refuse medical treatment will be dismissed for failure to state a claim.

---

³ In Colvin's objections, he also claims that he raised a Fourteenth Amendment substantive due process claim for "an egregious abuse of government power." However, a review of the complaint shows that this claim has not been asserted.

⁴ Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss at any time any prisoner action if the complaint is frivolous, malicious, or fails to state a claim upon which relief can be granted.  28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c).

⁵ In reading the pro se complaint indulgently, Colvin's excessive force claim based upon the alleged physical force that the Response Team used to escort and restrain Colvin during the medical exam will be considered a separate claim.

With regard to Colvin's Eighth Amendment claim regarding his forced medical treatment, *Davis* is, once again, instructive. In *Davis*, the prisoner premised his Eighth Amendment claim "entirely on his assertion that the forced medical treatment violated the Fourteenth Amendment." *Davis*, 977 F. App'x at 529. So, too, is Colvin's Eighth Amendment claim based upon the alleged forced medical treatment. Colvin alleges that "[t]he force used against me was clearly unwarranted and unjustified because I had submitted to the 'forced' medical treatment." (Compl. ¶ 26.) Furthermore, like *Davis*, this Court has found that Colvin's medical treatment does not state a claim for which relief can be granted under the Fourteenth Amendment and, moreover, Colvin "has pointed to no legal authority establishing that [his] treatment was otherwise unconstitutional." *Davis*, 977 F. App'x at 529. "[A]s the sequence of medical events suggests" in Colvin's complaint, the blood-pressure and weight exam "was far from unnecessary and wanton." *Davis*, 977 F. App'x at 529. The medical exam was completed to ensure Colvin's health while he engaged in a hunger strike. "Such sensible actions by prison officials do not violate the Eighth Amendment." *Id.*

Thus, Count 4, insofar as it alleges a claim under the Eighth and Fourteenth Amendments for unwanted medical care, does not state a claim for which relief can be granted. Therefore, this portion of Count 4 will be dismissed.[6]

### 3. Kosher Meal Issue

Colvin contends that the R & R "improperly weighed evidence" in making a recommendation on Defendants' Motion for Summary Judgment seeking dismissal of Counts 6 and 7. (Docket no. 30.) Because the R & R did not weigh evidence or make credibility determinations, but found <u>no</u> evidence to support Colvin's claims, Colvin's objection is overruled. This Court agrees that no objective evidence supports Colvin's claims. Moreover, besides the fact that no

---

[6] The use of excessive force claim against the Response Team for the force used in the escort and restraint of Colvin during the medical exam remains.

9

constitutional violation occurred, Defendants would be entitled to qualified immunity because they acted reasonably with regard to the Kosher requests and demands made by Colvin. Thus, Defendants' motion for summary judgment as to Counts 6 and 7 (docket no. 30), will be granted.

Therefore, Colvin's objection will be overruled.

### 4. Defendant Dr. Michael Engelsgjerd's Dismissal

Colvin's objection will be overruled. He provides no basis for his statement that Dr. Engelsgjerd "conspired with the other Defendants in inappropriately keeping the Plaintiff in Brooks [Medical Center] for over 14 days, in an effort to have the Plaintiff consume a non-Kosher meal to have him sent back to AMF." This Court finds no error in the reasons given by the R & R, along with Dr. Engelsgjerd's motion for summary judgment, for granting Dr. Engelsgjerd's motion. Therefore, Defendant Engelsgjerd's motion (docket no. 71), will be granted and Dr. Engelsgjerd will be dismissed.[7]

### III. PORTIONS OF THE R & R TO WHICH NO PARTY OBJECTED

The Court does not find any error in any portion of the R & R to which neither party objected. Thus, the Court adopts these portions. Therefore,

**IT IS HEREBY ORDERED** that the R & R (docket no. 94) is **adopted in part** and **rejected in part**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment as to Colvin's Use of Excessive Force claim (Count 4) (docket no. 23) is **granted in part** and **denied in part**. The motion is **denied** as to Colvin's claim that Defendants Obiden, Linder, Majurin, Jurva, Charles, and Saar allegedly used excessive force in escorting and restraining Colvin for a medical exam on January 11, 2010. The motion is **granted** as to all other Defendants and claims in Count

---

[7] Of course, he is also dismissed for the reason that this Court is granting Defendants' motion for summary judgment as to Count 6.

4, and therefore these claims and defendants are **dismissed**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment as to Colvin's claims Pertaining to Kosher Meals (Counts 6 & 7) (docket no. 30) is **granted**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Plaintiff's Retaliation Claims (docket no. 33) is **granted in part** and **denied in part**. The motion is granted as to Count 1 and Count 8. These claims will be **dismissed**. The motion will be **denied** as to Count 2 (against Defendants Capello, Sackett, and Sweeney) and Count 3 (against Defendants Hill and Sweeney).

**IT IS FURTHER ORDERED** that Defendants Napel's, Engelsgjerd's, and Patel's Motions (docket nos. 36, 48 & 71) are **granted**. Each of these Defendants is **dismissed**.

**IT IS FURTHER ORDERED** that Colvin's motions (docket nos. 57, 74, 76 & 92) are **denied without prejudice**.

It is so ordered.[8]

Dated: April 9, 2012                         /s/ Gordon J. Quist
                                            GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE

---

[8] For clarification, the following claims and Defendants remain:

- Count 2 against Defendants Capello, Sackett, and Sweeney for the claim that these Defendants retaliated by continuing Colvin's administrative segregation status;

- Count 3 against Defendants Hill and Sweeney for the claim that these Defendants retaliated against Colvin by ransacking his cell;

- Count 4 against Defendants Obiden, Linder, Majurin, Jurva, Charles, and Saar for allegedly using excessive force in escorting and restraining Colvin for a medical exam on January 11, 2010; and,

- Count 5 against Defendant Capello for allegedly retaliating against Colvin by placing him on Modified Access to the grievance procedure.

11