UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH COLVIN, JR.,

       Plaintiff,

v.                                    Case No. 2:10-cv-297
                                          HON. GORDON J. QUIST

GARY CAPELLO, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff prisoner Kenneth Colvin, Jr., filed this lawsuit asserting that his rights were violated while he was conducting a "religious fast."  Plaintiff alleges that on April 27, 2009, he had a heated conversation with defendant Timothy Hill regarding invasion of plaintiff's medical privacy while he was escorted from health care to his housing unit.  Plaintiff asserts that defendant Hill indicated that he was tired of plaintiff's hunger strike and the fact that he needed to escort plaintiff to health care each day.  Plaintiff was asked by medical staff if he had any pain and when plaintiff responded that he had kidney pain, defendant Hill stated "which one the right one?"  Plaintiff stated that defendant Hill should not comment on plaintiff's religious or medical matters.

About 15 to 20 minutes after being escorted back to the cell, defendant Hill brought two state duffel bags to plaintiff's cell and told plaintiff that he was moving downstairs to cell A-118 because of plaintiff's refusal to eat.  Plaintiff states that he was moved to a disciplinary wing from an honorary wing.  Plaintiff complains that prison staff routinely moves prisoners from the honor wing to the disciplinary wing in retaliation for grievance filings.

Plaintiff complained that defendant Hill retaliated against him by moving him from the honorary wing to the disciplinary wing when defendant Hill wrote a false misconduct ticket against plaintiff on July 22, 2009, in retaliation for plaintiff's complaints. Plaintiff states that defendant Hill was aware that plaintiff was number one for release to general population. Plaintiff filed a grievance against defendant Hill on May 12, 2009, for moving him to the disciplinary wing out of retaliation for being on a religious fast. Plaintiff states that defendants Capello and Sackett falsely stated that the move was routine and that there are no disciplinary wings at the prison. Plaintiff claims that defendants are conspiring to cover up the retaliatory act of moving him to the disciplinary wing. Plaintiff alleges that he was moved on May 29, 2009, to the honorary wing after he returned from the MBP Brooks center from his religious fast.

Plaintiff claims that defendants Capello and Sweeney continued the retaliation by not releasing him to general population on June 23, 2009, despite being misconduct free for five months. Plaintiff was not released to general population after being misconduct free for six months, although other prisoners had been released who were not six month misconduct free.

Plaintiff stated that on January 10, 2010, another prisoner told him that he overheard defendant Hill talking with Guard Truesdale. Defendant Hill stated that he was going to move plaintiff back to the disciplinary wing because plaintiff was refusing to eat due to his religious fast. On January 11, 2010, plaintiff was taken to health care where he refused medical treatment. When plaintiff returned to his cell it had been "ransacked," by defendant Hill and defendant Sweeney, while plaintiff was placed in the shower area. About an hour later plaintiff was told by defendant Sweeney that he would be moved downstairs. Plaintiff claims that this was done simply to harass him and retaliate against him for being on a religious fast. Plaintiff claims that he was on modified access to the grievance system from January 8, 2010, to April 7, 2010, which made the system

- 2 -

effectively unavailable to him despite his efforts to bring these matters to the attention of prison officials.

Plaintiff asserts that excessive force was used against him to submit to a medical examination. On January 11, 2010, during plaintiff's seventh day of fasting, he refused to have his blood pressure and body weight checked. He was told that if he refused, he would be forced by the facility's Response Team. Later that day, plaintiff was informed by defendant Obiden that plaintiff needed to go to health care to have his blood pressure and weight checked. Plaintiff was told that force would be used if he refused medical attention. A Response Team came to plaintiff's cell. Once plaintiff believed that they were serious, he agreed to accept the medical treatment. Plaintiff was placed in leg irons and handcuffs. Two Response Team members grabbed him by the right arm and placed pressure on his right arm. Plaintiff was forced to bend down while being escorted. Plaintiff argues that unnecessary force and pressure was used to escort him to medical care and he was yelled at to stop resisting although he never resisted.

When plaintiff arrived in the health care room, he was placed on a bed and one defendant applied pressure to his right jaw and ear area. Plaintiff stated that he was having trouble breathing and a defendant yelled that there was nothing wrong with plaintiff. Plaintiff claims that he was aggressively taken off the medical bed and escorted to the weight scale and aggressively placed on the scale. After his weight was taken, plaintiff tried to step off the scale. He was yelled at to stop resisting and then slammed to the floor where his face struck the floor. Plaintiff was taken back to his cell in total pain, dazed, exhausted and weak. Later that evening plaintiff was visited and examined by nurse Nancy. Plaintiff was taken to Baraga Memorial Hospital for observation because of elevated blood pressure and a rapid heart rate.

Plaintiff claims that he received loose teeth, bruises on his upper lip and right eyebrow, a bruised and sore shoulder, a bruised and sore jaw and ear, and cuts and bruises on both ankles and wrists from handcuffs and leg irons.  Plaintiff claims that the force used was unnecessary because he submitted to the request for medical care although he did not want medical care.

Plaintiff claims that he was denied access to the court by defendant Capello, when he was placed on modified access to the grievance system in retaliation for five duplicated grievances filed about the Kosher meal program.  Plaintiff claims that his request for grievance forms were ignored, preventing him from exhausting his grievances on issues he wished to present to the court.

Plaintiff and defendants both move for summary judgment.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is

- 4 -

sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The only remaining Eighth Amendment claim is for excessive force during plaintiff's escort to his medical examination. Plaintiff moves for summary judgment on his excessive use of force claim and his medical privacy claims. Defendants Obiden, Linder, Majurin, Saari, Jurva, and Charles argue that plaintiff's excessive force claim involving his escort to his medical examination should be dismissed. Plaintiff's claim alleges that defendants forced him to receive medical care while he was undertaking a religious fast protesting the refusal to provide him Kosher meals. Defendants claim that plaintiff was warned on three separate occasions that he would be forced to take a blood pressure and weight check if he refused the tests. Plaintiff ultimately agreed to go to health care. Plaintiff was escorted to health care and complains that unnecessary force was used during the escort and continued in the health care room. Plaintiff alleges that he sustained injuries including loose teeth, a bruise under his lip, and pain in his shoulder, back, jaw, right ear, ankles and wrists. Plaintiff claims that the authorization to use force, particularly a chemical agent, was made in violation of policy and that he had the right to refuse medical care. The issue is whether plaintiff's Eighth Amendment rights were violated by defendants' conduct.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits

conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the use of force must be analyzed under the Supreme Court authority limiting the use of force against prisoners.  This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321-22.

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment.  *Rhodes*, 452 U.S. 347.  The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.  In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response.  *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).  Physical restraints are constitutionally permissible where there is penological justification for their use.  *Rhodes*, 452 U.S. at 346.

On January 11, 2010, while plaintiff was undertaking a hunger strike, Warden Capello, Deputy Warden Tribley, and Dr. Patel of the Duane Waters Hospital authorized the use of a chemical agent and a move team if it was necessary to force plaintiff to submit to a health care

assessment, which included a weight check and blood pressure check.  The move team consisted of defendants Obiden, Linder, Majurin, Jurva, Saari and Charles and was video recorded by Officer Karppinen.  Plaintiff at first refused orders for a strip search.  Chemical agents were not used.  Once plaintiff decided to comply with the orders to submit to health care, he was placed in arm and leg restraints and removed from his cell.  Plaintiff was instructed to bend at the waist while walking, which is the standard method for a prisoner escort to prevent assaults on staff.

Plaintiff was taken to health care so that a nurse could check his weight and blood pressure.  Plaintiff started twisting and turning.  Defendant Charles applied a hold on plaintiff.  When that failed, defendant Charles applied a peroneal strike and plaintiff was secured on the floor.  Plaintiff was taken back to his cell and his restraints were removed.  RN Haataja noted that plaintiff was "violently angry and non-compliant. . . ."  She was unable to take plaintiff's weight because he was "bucking" the scale.  Plaintiff claims that he was not resisting, he was not violent or angry, and that restraint and force were unnecessary.  Plaintiff claims a review of the video recording will establish that the force used was excessive.  Plaintiff claims that he did get on the scale, but defendants used force that made him scream in pain.  Further, plaintiff claims that defendants' reports are contradictory.  Plaintiff further claims that he was treated for injuries that he received from defendants' assault from medical and dental care personnel.  Defendants have submitted the DVD recording of the incident.  After reviewing the video evidence it is apparent that a question of fact exists whether unnecessary and excessive force was used to restrain plaintiff during his medical examination.  Plaintiff was removed from his cell and restrained on an examination table while his blood pressure was taken.  Plaintiff was removed from the examination table and an attempt to take plaintiff's weight was made.  At some point one officer struck plaintiff and plaintiff was taken to the floor of the examination room.  A question exists as to whether the striking of plaintiff and taking

him to the floor was necessary under the circumstances.  In the opinion of the undersigned, a question of fact exists whether defendants used excessive force against plaintiff.

Defendants Capello, Hill, Sweeney, and Sackett, move to dismiss plaintiff's retaliation claims. Plaintiff claims that defendant Hill retaliated against him by transferring him from a cell in the honorary wing of the prison to the disciplinary wing of the prison.  Plaintiff claims that defendants Sweeney, Sackett and Capello falsely responded to his grievance by stating that the prison does not have a disciplinary wing.  Plaintiff alleges that he was continued in administrative segregation solely because he engaged in a religious fast while another prisoner who was not misconduct free was released from administrative segregation.  Plaintiff claims that defendants Hill and Sweeney ransacked his cell on January 11, 2010, in retaliation for his religious fast.  Plaintiff claims that defendants Hill and Sweeney engaged in a continuous campaign of harassment including name calling and issuing false misconduct tickets.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that his continued confinement in administrative segregation was due to the fact that he engaged in a religious fast.  Defendants deny this claim and assert that plaintiff

- 8 -

cannot factually support such a claim. Defendants claim that administrative segregation status is determined on a case-by-case basis. Defendants originally asserted in support of their previous motion for summary judgment, that the Security Classification Committee met on July 20, 2009, and continued plaintiff's administrative segregation status. Plaintiff has shown that he was misconduct free for over six months and received a high evaluation while confined in administrative segregation.

Defendants now have asserted additional reasons to explain why plaintiff was housed in administrative segregation. This court has previously held:

> Colvin has shown a genuine issue of material fact whether the reasons that Defendants gave were pretext. Plaintiff established that he was misconduct free for over six months and received a high evaluation while confined in administrative segregation. Also, viewing the evidence in the light most favorable to Colvin, a different prisoner (Davis) was released from administrative segregation with a lower evaluation and who engaged in more recent misconduct. Therefore, a genuine issue of material fat exists whether Defendants' reasons for keeping Colvin in administrative segregation were pretext for Colvin engaging in his religious fast.

Memorandum Opinion and Order, docket #101, at 5.

Defendants Capello, Sackett and Sweeney now argue that they are entitled to dismissal of this retaliation claim. Defendants Sackett and Sweeney indicate that plaintiff was continued in segregation because the review committee believed that a longer observation period was necessary. That "new" argument does nothing to add to this issue. There still remains the issue of whether the reasons provided by defendants to keep plaintiff in segregation "were pretext." Defendants cannot now offer new or more specific reasons for keeping plaintiff in segregation without addressing the factual evidence which supports plaintiff's claims. In the opinion of the undersigned, a genuine issue of fact still remains on this issue and any new issues or claims that defendants offer are simply argumentative.

Defendants Hill and Sweeney argue that the retaliation claim for ransacking plaintiff's cell should be dismissed. Defendants argue that there was no adverse conduct taken during the cell search, because nothing was broken. Defendants deny ransacking or making a mess in plaintiff's cell. Defendants assert that plaintiff merely complains that his personal belongings were moved out of containers and items were thrown on the floor. Plaintiff does not allege that the ransacking of the cell was an isolated event, but rather part of continuing serious of retaliatory acts taken by defendants against him. Further, plaintiff has pointed out that the fact that defendants never logged the cell search into the Unit Record Log Book is evidence that this search was something other than a routine cell search. In the opinion of the undersigned, plaintiff has established a genuine issue of fact on this issue.

Defendant Capello moves to dismiss plaintiff's retaliation claim against him. Plaintiff has asserted that defendant Capello retaliated against plaintiff by refusing to provide Step I grievance forms while plaintiff was on modified access to the grievance procedures. Defendant Capello asserts that he never saw plaintiff's requests for the forms. Plaintiff has asserted more than simply making written requests for the forms. Plaintiff has asserted that he also made multiple verbal requests to defendant Capello in January. Accepting the facts in the light most favorable to plaintiff, plaintiff has established that a genuine issue of fact exists regarding the reason that he was denied grievance forms by defendant Capello.

Similarly, defendants' claim that they are entitled to qualified immunity should be denied because a question of fact exists as to the merits of plaintiff's excessive force claims and retaliation claims. When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).

Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

Accordingly, it is recommended that plaintiff's motion for summary judgment (Docket #161) be denied and defendants' motion for summary judgment (Docket #164) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   December 14, 2012