UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH COLVIN, JR.,

        Plaintiff,

v.

                                    Case No. 2:10-CV-297

                                    HON. GORDON J. QUIST

GARY CAPELLO, et al.,

        Defendants.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION
## IN PART AND REJECTING IN PART

On December 14, 2012, Magistrate Judge Timothy P. Greeley issued a Report and Recommendation (R & R) (docket no. 202) recommending that this Court deny both Plaintiff's and Defendants' Motions for Summary Judgment (docket nos. 161 & 164). Plaintiff and Defendants have filed timely Objections to the R & R. When a party properly objects to any part of a magistrate judge's disposition, this Court must review the disposition *de novo*. Fed. R. Civ. P. 72(b)(3). After conducting a *de novo* review of the R & R, Plaintiff's and Defendants' Objections, and the pertinent portions of the record, the Court concludes that the R & R should be adopted in part and rejected in part. The Court will adopt the R & R with respect to its recommendation that the Court deny Defendant's Motion for Summary Judgment on Plaintiff's retaliation claims and deny Plaintiff's Motion for Summary Judgment on Plaintiff's excessive force claim. However, the Court will reject the R & R with respect to Defendant's Motion for Summary Judgment on Plaintiff's excessive force claim. Summary judgment will be granted.

## I. BACKGROUND

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The alleged events occurred while Plaintiff was housed at Baraga Maximum Correctional Facility and Marquette Branch Prison. Plaintiff asserts that his rights were violated while he conducted, and in retaliation of, a "religious fast." Pursuant to this Court's Order dated April 9, 2012, Plaintiff has alleged four remaining claims—one excessive force and three retaliation claims. Specifically, Plaintiff alleges: (1) Defendants Obiden, Linder, Majurin, Jurva, Charles, and Saari used excessive force in escorting Plaintiff to a medical examination; (2) Defendants Capello, Sackett, and Sweeney[1] retaliated against Plaintiff by continuing his administrative segregation status; (3) Defendants Hill and Sweeney retaliated by ransacking Plaintiff's cell; and (4) Defendant Capello retaliated by denying Plaintiff access to grievance forms.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

In deciding a motion for summary judgment, the court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Agristor Fin.*

---

[1] The Court has identified a clerical error in its Order dated April 9, 2012, that wrongly terminated Defendant Linda Tribley as party. (Docket no. 217.) The Court has reinstated Tribley a party in this case. (Docket no. 229.)

*Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010).

### B. Excessive Force Claim

Plaintiff limits his objection to one argument: the magistrate judge incorrectly interpreted the video evidence as presenting a genuine issue of material fact for trial regarding the excessive use of force. Plaintiff argues that the evidence is so one-sided that Plaintiff is entitled to summary judgment because Plaintiff was not "acting threatening, disruptive, assaultive, and abusive towards the Defendants which would cause them to administer force justifiably as it would relate to penological justification." (Docket no. 213, Page ID 1613.) Defendants similarly object that while the video documents Defendants taking Plaintiff to the floor, the force was executed in a good-faith effort to maintain or restore discipline and not maliciously or sadistically applied to cause harm.

In the R & R, the magistrate judge, after viewing the video evidence, concluded that questions of facts exist whether unnecessary or excessive force was used on Plaintiff during his medical examination.

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments: they cannot be 'cruel and unusual.'" *See Rhodes v. Chapman*, 452 U.S. 337, 345, 101 S. Ct. 2392, 2398. "The Court has interpreted these words 'in a flexible and dynamic manner,' and has extended the Amendment's reach beyond the barbarous physical punishments at issue in the Court's earliest cases." *Id.* (citations omitted). "Today the Eighth Amendment prohibits

punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain,'" *id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S. Ct. 2909, 2925 (1976)), or are grossly disproportionate to the severity of the crime, *Coker v. Georgia*, 433 U.S. 584, 592, 97 S. Ct. 2861, 2866 (1977) (plurality opinion). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *See Gregg*, 428 U.S. at 183, 96 S. Ct. at 2929; *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976). The United States Supreme Court has observed that the words of the Eighth Amendment "are not precise," and "their scope is not static." *Trop v. Dulles*, 356 U.S. 86, 100–01, 78 S. Ct. 590, 598 (1958) (plurality opinion). "The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Id.*

The Eighth Amendment protects prisoners from the use of excessive force by prison officials. *Griffin*, 604 F.3d at 953–54 (citing *Whitley v. Albers*, 475 U.S. 312, 327, 106 S. Ct. 1078, 1088 (1986)). When guards use force to keep order, a court should apply the standards enunciated in *Whitley* to determine if the guards used excessive force. *See Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 999 (1992); *see also Wilkins v. Gaddy*, ___ U.S. ___, 130 S. Ct. 1175, 1178–79 (2010). The "core judicial inquiry" in *Whitley* is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999; *Wilkins*, 130 S. Ct. at 1178. In determining whether the use of force was wanton and unnecessary, a court may "evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'" *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999 (citing *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085); *accord Griffin*, 604 F.3d

4

at 953–54 (holding a guard's use of a leg-sweep maneuver was a good-faith effort to maintain or restore discipline in the context of an inmate's non-compliance and did not "evince such wantonness ... as is tantamount to a knowing willingness"). The Sixth Circuit has explained,

> [t]o ascertain weather excessive force was used under the Eighth Amendment, the court must determine whether the force was applied in a good-faith effort to maintain or restore discipline, *or maliciously and sadistically to cause harm*. Such a claim has both an objective and a subjective component. The objective component requires that the pain be serious. The subjective component requires that the offending, non-penal conduct be wanton.

*Griffin*, 604 F.3d at 954 (quoting *Watkins v. Evans*, No. 95-4162, 95-4341, 1996 WL 499094, at *2 (6th Cir. Sept. 3, 1996).

In numerous cases, the Sixth Circuit has also held that restraints were penologically justified where, in light of the inmate's disruptive behavior, the inmate continued to pose a threat. *See, e.g.*, *Hayes v. Toombs*, No. 93-00890, 1994 WL 28606, at *1 (finding a significant threat of further destructive behavior justified application of top-of-bed restraints against inmate); *Harris v. Ohio Dep't of Rehab/Corr.*, No. 91-3920, 1992 WL 56999, at *2 (6th Cir. Mar. 24, 1992) (requiring inmate to wear restraint belt during visits was penologically justified); *Boswell v. Vidor*, No. 89-2372, 1990 WL 143501, at *1 (6th Cir. Oct. 2, 1990) (placing inmate in full restraints for twelve hours was justified where inmate had disobeyed a direct order by repeatedly refusing to return plastic gloves given to him for cleaning his cell).

The Sixth Circuit has also cautioned that "an official's decision to use force is entitled to deference." *Griffin*, 604 F.3d at 954. It has observed,

> [o]fficials confronted with a prison disturbance must balance the threat [that] unrest poses to intimates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their

> judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Id.* (quoting *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (second alteration in original)). "The issue is therefore not whether the use of force was absolutely necessary in hindsight, but 'whether the use of force would plausibly have been thought necessary, or instead evinced such a wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occurred.'" *Id.* (quoting *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085).

After careful review of the video evidence (Ex. F., docket no. 165-7), the Court concludes that Plaintiff has failed to present a genuine issue of material fact on the issue of excessive force. The video documents how the prison response team escorted Plaintiff from his cell to a medical examination. It begins with Defendant Obiden asking Plaintiff whether he will voluntarily attend a medical examination with a nurse, who would "get [him] weighed in." Plaintiff refuses. Plaintiff explicitly asks Obiden whether Plaintiff will be escorted by a prison "response team" to the examination if Plaintiff refuses. Obiden acknowledges that a response team will probably need to escort Plaintiff. Again, Plaintiff refuses to go a medical examination. At that point, the video cuts to a response team of six officers, the named Defendants for this claim, who go to Plaintiff's cell and again ask Plaintiff if he will go to a medical examination. After Plaintiff refuses, Defendants inform Plaintiff that they will escort him to a medical examination. When Plaintiff refuses, Defendants conduct a strip search then apply restraints to Plaintiff. Plaintiff complies with the search and the application of restraints. He also appears to comply—by not resisting—during the walk to the medical examination room. Once Plaintiff arrives in the medical examination room, a short distance down the hall from Defendant's cell, Plaintiff informs the officers three times that he is going to sue them for taking him to the medical examination, then swears and pointedly calls Defendants "bitch

ass motherfuckers." One Defendant asks Plaintiff if he will allow the nurse to take his blood pressure, and Plaintiff angrily refuses. Therefore, Defendants hold Plaintiff down on an examination table, with Plaintiff lying on his stomach with his hands behind his back. Two officers hold Plaintiff near his shoulders, two officers hold his legs, and one officer holds his feet. At that point, Plaintiff raises his right side and Defendants react by placing opposing force on Plaintiff's right side and instructing Plaintiff not to resist. Plaintiff consistently replies that he is not resisting. While Plaintiff is lying on the table, he also continually informs Defendants that he cannot breathe and that he has a lung disease. During the examination, Plaintiff lies on the table, under the restraint of Defendants for a total of two minutes and 33 seconds while the nurse appears to take his blood pressure and pulse. Defendants then inform Plaintiff that he will be weighed. As Defendants assist Plaintiff from the table to the floor, Plaintiff resists by not standing on his feet—instead slumping to his knees on the ground—and refusing to get on the scale. Defendants get Plaintiff onto his feet. While Plaintiff is standing in front of the scale, one Defendant instructs the other Defendants to, "bring him on," presumably an instruction to lift Plaintiff onto the scale, but Plaintiff again physically resists. In response, Defendants quickly take Plaintiff to the ground. To accomplish this, one Defendant in the front right appears to apply one strike of moderate force to Plaintiff's right side. Defendants then hold Plaintiff's body and face to the floor for approximately 30 seconds. During that time, a Defendant asks Plaintiff if he will comply by walking back to his cell, which Plaintiff refuses—thus prolonging Plaintiff's time on the floor—but Plaintiff then agrees to comply, at which point Defendants lift Plaintiff by his arms and shoulders to his feet.

    Looking to the principles articulated by the Supreme Court, this Court considers whether the force was applied in a good-faith effort to maintain or restore discipline, or if it was applied

*maliciously and sadistically to cause harm. See Hudson*, 503 U.S. at 7, 112 S. Ct. at 999. In making that determination, the Court may consider the penological need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and efforts made to temper the severity of the force. *Id.*

As a preliminary matter, the video evidence documents that Plaintiff refused to attend any medical examination or have his blood pressure or weight taken by a nurse. Even before any significant force was applied, Plaintiff threatened to sue Defendants. Although Plaintiff argues that the restraint and force was unjustified because he was not acting "threatening, disruptive, assaultive, and abusive" toward Defendants, Plaintiff does not contest that he refused to be examined. (Docket no. 213, Page ID 1613.) That Plaintiff did not resist once restrained is not the focus of the inquiry. The video documents Plaintiff's refusal to have his blood pressure taken. Thus, Plaintiff was not in compliance with prison policy. Moreover, the Court disagrees with Plaintiff's characterization of his behavior. Plaintiff did physically resist mounting the scale, and did act in a verbally disruptive manner when entering the examination room.

Second, prison officials had a strong penological interest in monitoring Plaintiff's blood pressure and weight while he conducted a "religious fast," to "ensure [Plaintiff] was not placing his life at jeopardy." (*See* Mem. Op. Order, Docket no. 101, Page ID 823 (citing *Davis v. Agosto*, 89 F. App'x 523, 528 (6th Cir. 2004) and *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992)).)

Third, regarding the relationship between the penological interest and the amount of force used, the video reveals that Defendants used moderate restraint to hold Plaintiff in place for approximately two and one-half minutes, and used moderate force to take Plaintiff to the ground. All force appears to be directly related to measuring Plaintiff's blood pressure and weight. As soon

as Defendants determined Plaintiff was resisting mounting the scale, which made it impossible to take an accurate measurement, Defendants applied moderate force and held Plaintiff on the ground for a limited amount of time. Once Plaintiff was on the ground, one Defendant asked Plaintiff, almost immediately, if Plaintiff would comply by walking back to his cell, which Plaintiff refused.

Fourth, with respect to the threat reasonably perceived by the officials, the Court observes that Plaintiff appeared agitated because he claimed a medical examination was a violation of his constitutional rights. Therefore, Plaintiff was shouting that he was going to sue Defendants and swearing, including calling Defendants a lewd epithet. Defendants could have reasonably perceived that Plaintiff presented some threat if not restrained, including a threat to the nearby nurse who was trying to take Plaintiff's blood pressure and weight.

Finally, Defendants appear to have tempered their use of force. Defendants repeatedly asked Plaintiff to voluntarily attend a medical examination before they activated a response team. Defendants also limited their use of restraint to the short period of time necessary to check Plaintiff's blood pressure and weight before returning Plaintiff to his cell. And, of course, no force at all would have been used had Plaintiff simply had his blood pressure taken and been weighed.

Viewed in the light most favorable to Plaintiff, even if Plaintiff experienced serious pain while restrained, there is a subjective element to the use of force. *Griffin*, 604 F.3d 949, 954. The issue is not weather the use of force was "absolutely necessary in hindsight," but whether it "could plausibly be thought necessary, or instead evinced such wantonness with respet to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.* (citing *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085). Under the circumstances presented in the video, the Court concludes that no rational trier of fact could find for Plaintiff on the issue of excessive force.

Defendants had a strong penological justification, Plaintiff refused to comply, Plaintiff resisted Defendants' efforts to take Plaintiff's blood pressure and weight, Plaintiff was verbally disruptive, Defendants limited their use of force to that which plausibly could have appeared reasonably necessary to carry out the penological necessity, and Defendants took steps to temper their use of force. Thus, Plaintiff has not demonstrated a genuine issue of fact on the issue of whether Defendants evinced wantonness tantamount to willingness that serious pain occur. *Id.* Therefore, the Court will grant summary judgment in favor of Defendants on this claim.

### C. Retaliation Claims
### 1. Administrative Segregation

Defendants also object to the R & R's recommendation that this Court deny Defendants' Motion for Summary Judgment regarding Plaintiff's administrative segregation claim. Specifically, Defendants argue that they have established that they would have taken the same action absent Plaintiff's protected activity, so they must prevail on summary judgment.

Retaliation by prison officials based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999) (en banc). To establish a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in constitutionally protected conduct; (2) an adverse action was taken against him that would "deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was motivated, at least in part, by the plaintiff's protected conduct. *Id.* at 394. A plaintiff must be able to prove that the exercise of the protected conduct was a substantial or motivating factor in the defendant's allegedly retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568,

576 (1977)). "If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct." *Id.*

In this case, Plaintiff alleges that he was misconduct free for sixth months and other prisoners who were not six-months misconduct free were released before him. Plaintiff also specifically alleges that when he inquired about the possible termination of his segregation status, Defendant Sackett said, "Are you serious, after all the money you just cost us." (Compl., Docket no. 1, Page ID 7.) In support of their Motion for Summary Judgment, Defendants argue that Plaintiff was continued in administrative segregation status because the review committee "collectively" determined that "a longer evaluation period in segregation was necessary due to the nature of Plaintiff Colvin's ticket and misconduct history." (Sackett Aff., Ex. A, Docket no. 165-2, Page ID 1135.) As the magistrate judge noted in his R & R, Defendants' justification for Plaintiff's continued administrative segregation is a new argument in the record. Moreover, even accepting it as timely, Defendant's argument does not establish that, when the evidence is viewed in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S. Ct. 2505, 2512 (1986); *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004), no reasonable jury could return a verdict for Plaintiff, *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. Thus, a genuine issue remains whether Defendants' reasons for continuing Plaintiff's administrative segregation was pretextual.

**2. Ransacking Plaintiff's Cell**

Defendants also object to the R & R's recommendation that this Court deny Defendants' Motion for Summary Judgment regarding Plaintiff's claim that Defendants Hill and Sweeney ransacked Plaintiff's cell in retaliation. Specifically, Defendants argue that Plaintiff failed to show that any "adverse action" had taken place because Plaintiff did not allege his possessions were missing or destroyed. Like the magistrate judge, this Court finds that Plaintiff's allegations are not limited to an isolated event, but made in the context of an alleged pattern of continual harassment by Defendants, including Hill and Sweeney. Moreover, as Plaintiff has alleged, that Defendants never logged the search in the Unit Record Log Book is evidence that the search was not a routine cell search. Therefore, there exists a genuine issue of fact on whether Defendants Hill and Sweeney acted in retaliation.

### 3. Grievance Forms

Defendants next object to the R & R's recommendation that the Court deny Defendants' Motion for Summary Judgment because Plaintiff has failed to present sufficient evidence to support that Defendant Capello's failure to provide grievance forms was causally connected to Plaintiff's protected conduct. The Court agrees that Plaintiff has not produced substantial evidence in support of this claim. However, the Court notes that Plaintiff has sufficiently alleged the elements of a First Amendment retaliation claim, including that Capello conspired with other Defendants to keep Plaintiff from bringing his constitutional claims to court, a specific adverse action and retaliatory motive. Plaintiff also alleged that, in addition to written complaints, he made two in-person complaints with Capello regarding Plaintiff's inability to access grievance forms. Defendants' argument in support of summary judgment on this claim is that Capello never received Plaintiff's written complaints. However, Defendants have not addressed why Capello never responded to

Plaintiff's in-person complaints. Therefore, treating Plaintiff's verified Complaint as an affidavit for purposes of a summary judgment motion, and viewing the facts in a light most favorable to Plaintiff, Plaintiff has at least established a genuine issue of fact regarding the reason Capello allegedly denied Plaintiff grievance forms.

### IV. Immunity

Finally, Defendants object to the R & R because Defendants argue they are entitled to qualified immunity. The Sixth Circuit applies a three-part test to determine whether a government official is entitled to qualified immunity: (1) whether a Plaintiff has shown a violation of a constitutionally protected right; (2) whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated that right; and (3) whether the plaintiff has alleged sufficient facts, and supported the allegations with sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established rights. *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002) (citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)). If a plaintiff establishes these elements, a defendant is not entitled to qualified immunity. *See id.* A defendant bears the initial burden of presenting facts that, if true, would entitle him or her to immunity. *See Noble v. Schmitt*, 87 F.3d 157, 161 (6th Cir. 1996). However, a plaintiff "will defeat a qualified immunity defense if he can produce sufficient evidence after discovery to prove the existence of genuine issues of material fact regarding the issue of immunity, or if the undisputed facts show that defendant violated [a plaintiff's] clearly established rights. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 637–38, 107 S. Ct. 3034, 3038 (1987)). Where there exists a question of fact for the jury, as opposed to a legal issue for the court to decide, Defendants are not entitled to qualified immunity. *See Kain v. Nesbitt*,

156 F.3d 669, 672–73 (6th Cir. 1998), *abrogated on other grounds by Goad v. Mitchell*, 297 F.3d 497, 502–03 & n.4 (6th Cir. 2002), *as recognized by Johnson v. Hayden*, 67 Fed App'x 319, 323 (6th Cir. 2003). When conducting a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. *See Kain*, 156 F.3d at 672. "This would be true notwithstanding that the trial judge found [a defendant officer] to be more credible than the plaintiff, because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

Here, the Court has determined that questions of fact exist as to Plaintiff's three retaliation claims. Therefore, the Court concludes that Defendants are not entitled to qualified immunity on those claims. Regarding Plaintiff's excessive force claim, because the Court will grant summary judgment to Defendants, it will not reach the issue of qualified immunity.

Therefore,

**IT IS HEREBY ORDERED** that the magistrate judge's Report and Recommendation (docket no. 202) is **ADOPTED IN PART AND REJECTED IN PART** as the opinion of this Court.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (docket no. 164) is **GRANTED IN PART AND DENIED IN PART**. It is granted with respect to Plaintiff's excessive force claim. It is denied with respect to Plaintiff's retaliation claims.

**IT IS FURTHER ORDERED** that Defendants' Objection to the Report and Recommendation (docket no. 210) is **OVERRULED IN PART AND SUSTAINED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (docket no. 161) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Objection to the Report and Recommendation (docket no. 213) is **OVERRULED**.


Dated: January 28, 2013 /s/ Gordon J. Quist

GORDON J. QUIST
UNITED STATES DISTRICT JUDGE